IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00468 JMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | WITHDRAW GUILTY PLEA |
| | ) | |
| JEFFREY D. SLOAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S
MOTION TO WITHDRAW GUILTY PLEA**

**I.  INTRODUCTION**

Defendant Jeffrey D. Sloan ("defendant") entered a guilty plea to

knowingly possessing a computer hard drive containing visual depictions of

minors engaged in sexually explicit conduct on July 6, 2007.  He now seeks, prior

to sentencing, to withdraw from that guilty plea, claiming that: 1) his attorney did

not adequately explore with him the option of going to trial, including the

strengths and weaknesses in proceeding to trial; 2) his attorney failed adequately

to inform him of the plea agreement stipulations regarding the United States

sentencing guidelines; and 3) he was not given sufficient time to review the plea

agreement prior to entering his plea of guilty.  On November 15, 2007, the court

received oral testimony from defendant and defendant's former counsel, Assistant

Federal Public Defender Matthew C. Winter ("AFPD Winter").  After reviewing

the motion, the supporting and opposing memoranda, the testimony of the

witnesses, and the arguments of counsel, the court DENIES the motion to

withdraw the guilty plea.

## II.  <u>BACKGROUND</u>

On August 30, 2006, defendant was charged in a one-count

indictment with knowingly possessing a computer hard drive containing visual

depictions of minors engaged in sexually explicit conduct.  AFPD Winter was

appointed to represent defendant.

On December 21, 2006, AFPD Winter filed a motion to suppress

statements that defendant made to law enforcement agents and evidence obtained

from a warrantless search of his computer.  After a May 7, 2007 evidentiary

hearing, the court denied the motion to suppress by written order dated May 22,

2007.  Although the court was told after May 22, 2007 that defendant would enter

a plea of guilty, the parties informed the court during a June 15, 2007 status

conference that the case would proceed to trial.  A short time later, on June 20,

2007, court records reflect that the parties had reached a plea agreement, and that defendant would enter a plea of guilty on July 6, 2007.

On that date, pursuant to Federal Rule of Criminal Procedure 11(a)(2), defendant entered a conditional plea of guilty to the one-count indictment, and reserved his right to appeal this court's denial of his motion to suppress. Plea agreement ¶ 4. The memorandum of plea agreement also contains a recitation of the possible penalties, *id*. ¶ 8, the facts to which defendant stipulated, *id.* ¶ 9, offense level stipulations under the United States sentencing guidelines, *id.* ¶ 11(b), a partial waiver of defendant's right to appeal, *id*. ¶ 14, and an acknowledgment of the rights defendant was giving up by pleading guilty. *Id*. ¶ 17.

During the change of plea proceeding, defendant was sworn to answer all questions truthfully. He was told that he could consult with AFPD Winter in private during the change of plea proceeding. Defendant stated that he was thinking clearly, that he had sufficient time to discuss the facts of his case and his decision to plead guilty with AFPD Winter, and that he was satisfied with AFPD Winter's representation of him. July 6, 2007 Tr. 5-6. Defendant confirmed that he understood the charge against him and the maximum possible penalties.

When asked if he had read the entire plea agreement, discussed it with AFPD Winter, and had all of his questions answered by AFPD Winter before signing the agreement, defendant stated, "Yes, I did, Your Honor." *Id*. at 8. Defendant then confirmed that he understood the plea agreement and all of its terms, and that he had no questions for AFPD Winter or the court regarding the plea agreement. *Id*. at 8-9.

Next, the court discussed the nature of the appeal waiver with counsel. After this discussion, a handwritten correction was made to paragraph 14(b) of the plea agreement and defendant confirmed that he understood this correction. The court then engaged in the following colloquy with defendant:

> THE COURT: All right. Mr. Sloan, let me go through some of this with you. In this plea agreement starting on page 5, there's a very specific stipulations between the parties as to how the guidelines, United States sentencing guidelines should apply in this case. I . . . assume you've had some detailed conversations with Mr. Winter regarding that?
>
> MR. SLOAN: Yes, I have, Your Honor.
>
> THE COURT: And you understand in general the sentencing guidelines?
>
> MR. SLOAN: Yes, I do, Your Honor.

*Id*. at 15-16.

4

The court then confirmed that defendant understood the rights he was waiving by entering a plea of guilty, including the appeal waiver provision, his right to a trial, and all rights associated with a trial.  At the conclusion of the proceeding, the court accepted defendant's plea of guilty.[1]

Defendant testified in support of his motion.  He asserted on direct examination that between May 22, 2007 and July 6, 2007, he had either no discussions or only brief discussions with AFPD Winter regarding his option of electing to proceed to trial or entering a plea of guilty.  On cross-examination, defendant admitted that after the denial of his motion to suppress, AFPD Winter explained the difficulty of prevailing at trial, and that in fact he did discuss various options open to him, including proceeding to trial.[2]

In response to questions from the court, defendant testified that although he understood the sentencing guideline stipulations contained in his plea agreement, he did not have a comprehension as to the application of the

---

[1] The plea agreement sets forth the factual basis for the plea, and defendant provided the court with a statement supporting his plea of guilty during the change of plea proceeding. Because defendant's instant motion does not claim factual innocence, it is unnecessary for the court to set forth the underlying facts in this Order.

[2] AFPD Winter apparently informed defendant that given the images contained on his computer, he would likely lose at trial and that his sentence would likely be harsher if he was found guilty at a trial as opposed to entering a plea of guilty.

sentencing guidelines.  Nonetheless, defendant admitted that the guidelines,

including various enhancements, were explained to him along with the possible

guideline range that may apply to his case.  Defendant also admitted that he knew

that the plea agreement contained offense level stipulations and the likely outcome

of the advisory guideline calculations.

Defendant further testified that during a July 3, 2007 telephone

conversation with AFPD Winter, he agreed to enter a plea of guilty pursuant to a

plea agreement.  The first time that defendant read the final plea agreement was

immediately prior to the July 6, 2007 change of plea hearing.[3]  He claims that he

went to AFPD Winter's office, was brought to the courtroom, and discussed the

plea with AFPD Winter in court for approximately 20 minutes.[4]  He further

testified that AFPD Winter explained "certain key highlighted points" of the plea

agreement, but did not go over each term of the plea agreement in detail.  AFPD

Winter did explain to him the sentencing guideline stipulations contained in the

---

[3] Defendant also testified that because of his military obligations, he did not sleep the
night prior to the July 6, 2007 proceeding and as a result was not thinking as clearly as normal.
He explained that when he told the court under oath on July 6, 2007 that he was thinking clearly,
he was not telling the truth.

[4] AFPD Winter credibly testified that he discussed the plea agreement with defendant in
his office, not the courtroom.  Although the place of the meeting is not particularly relevant, this
discrepancy in the testimony does provide insight into defendant's ability to recall events.  At
times during his testimony, defendant appeared to have difficultly recalling specific events and
discussions with AFPD Winter.

agreement and questions that the court would ask during the proceeding.

Defendant understood that as a result of the plea of guilty he was waiving his right

to trial, but reserving the right to appeal the denial of his motion to suppress.

When asked if he had an opportunity to have all of his questions answered by

AFPD Winter, defendant responded, "I'm sure I did."

Finally, although defendant stated that he did in fact enter a knowing

and informed plea of guilty, he explained that after entering the plea of guilty, he

had a change of heart.  He changed his mind regarding his decision to enter the

plea after he came to believe that entering a plea of guilty was not the best course

for him.

In contrast to defendant's testimony, AFPD Winter credibly testified

that defendant was well informed prior to entering his plea of guilty.  AFPD

Winter explained that since December 2006, he had several conversations with

defendant regarding proceeding to trial, and discussed the government's evidence,

the ability to defend against the charges, ways to minimize possible prejudice from

the jury viewing pornographic images of children, and defendant's trial rights.[5]

During a June 15, 2007 meeting, AFPD Winter "discussed the pros and cons of

---

[5] In a separate order dated November 2, 2007, this court ruled that defendant waived, by bringing the instant motion, his attorney-client privilege with AFPD Winter with respect to all matters raised by defendant's motion.

pleading guilty either pursuant to a plea agreement or without a plea agreement."
AFPD Winter Decl. ¶ 10.

Prior to July 6, 2007, AFPD Winter and defendant met on at least two occasions to discuss the application of the United States sentencing guidelines to his case. AFPD explained the applicable guidelines to defendant by printing the applicable guidelines, showing them to defendant, and then circling the applicable guidelines and enhancements that may apply to defendant's case.[6]

AFPD Winter stated that during the July 3, 2007 telephone conversation, he explained to defendant that the United States had agreed to a conditional plea of guilty. During this conversation, AFPD Winter explained the guideline stipulations in the plea agreement and the probable guideline range. AFPD Winter testified that because he had discussed previous versions of draft plea agreements with defendant, he limited his July 3, 2007 discussion to changes made in the final version of the plea agreement, including the guideline stipulations and the appeal waiver provision. Defendant then agreed to accept the plea agreement. On July 6, 2007, prior to court, AFPD Winter again explained the

---

[6] AFPD Winter "explained to Mr. Sloan how I anticipated the United States Sentencing Guidelines . . . would be applied to his case. I did so by printing the applicable Guidelines, showing them to him, and explaining how and why they applied to his case." AFPD Winter Decl. ¶ 8.

guideline stipulations in the plea agreement, and went through each page of the

plea agreement with defendant.  Defendant told AFPD Winter that he understood

the plea agreement.

## III.  ANALYSIS

Defendant claims that: 1) his attorney did not adequately explore

with him the option of going to trial, including the strengths and weakness in

proceeding to trial; 2) his attorney failed adequately to inform him of the plea

agreement stipulations regarding the United States sentencing guidelines; and 3)

he was not given sufficient time to review the plea agreement prior to entering his

plea of guilty.[7]

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a

defendant may withdraw from a plea of guilty before sentencing if "the defendant

can show a fair and just reason for requesting the withdrawal."  Although the

burden is on the defendant to demonstrate a fair and just reason to withdraw from

the plea, this standard is to be applied liberally.  *United States v. Davis*, 428 F.3d

---

[7] In his motion, defendant also claims that he was not fully informed of the possible
implications of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248.
Despite this allegation, AFPD Winter credibly testified that he in fact did explain the possible
impact of this new law to defendant.

802, 805 (9th Cir. 2005).  The defendant need not show that the plea itself was invalid in order to prevail.  *Id*. at 806.

"Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea."  *See United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004).[8]  A mere change of heart about the decision to plead guilty is not a "fair and just reason."  *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987); *United States v. Maxwell*, 498 F.3d 799, 802 n.3 (8th Cir. 2007); *United States v. Washington,* 480 F.3d 309, 316-17 (5th Cir. 2007); *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003); *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992).

"Ineffective assistance of counsel can render a plea agreement involuntary, and is therefore a valid basis for withdrawing a guilty plea."  *United States v. Lundy*, 484 F.3d 480, 484 (7th Cir. 2007).  In the Ninth Circuit, "a defense counsel's erroneous advice may warrant withdrawing a plea even if the

---

[8] The Ninth Circuit has clarified that the failure to assert a claim of factual innocence should not count against a defendant seeking to withdraw a plea under Federal Rule of Criminal Procedure 11(d)(2)(B).  *United States v. Garcia*, 401 F.3d 1008 (9th Cir. 2005).  The court thus rejects the government's contention that defendant's failure to claim factual innocence should be considered by the court as a factor weighing against granting the motion.

defendant does not prove that he would not have pleaded guilty but for the erroneous advice." *Davis,* 428 F.3d at 808.  Thus, the fair and just reason standard may be satisfied by showing that "counsel's gross  mischaracterization plausibly *could* have motivated his decision to plead guilty." *Id.* at 808; *see also United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005) (guilty pleas cannot be induced by misrepresentations).

"A plea agreement must be knowing and voluntary, which requires that 'the defendant possess[ ] an understanding of the law in relation to the facts.'" *United States v. Jones*, 472 F.3d 1136, 1140 (9th Cir. 2007) (*citing McCarthy v. United States*, 394 U.S. 459, 466 (1969)).  The amount of time a defendant has to consider the plea "is only relevant if it somehow rendered his plea coerced, and therefore involuntary." *Doe v. Woodford*, No. 06-16154 (9th Cir. Nov. 27, 2007).

The court finds, as outlined below, that AFPD Winter did explain to defendant his option to proceed to trial, adequately explained the sentencing guidelines to defendant, and that defendant had a sufficient understanding of the plea agreement such that his plea was not coerced, but voluntary.  Based on a review of the entire record, including defendant's testimony, the court is left with a firm conviction that defendant has simply had a change of heart, an insufficient basis to permit a withdrawal of the plea.

11

First, the court concludes that AFPD Winter did explain to defendant his various options -- proceeding to trial or entering a plea of guilty with or without a plea agreement -- including the strengths and weaknesses of each option. AFPD Winter credibly testified that he had several conversations with defendant regarding proceeding to trial, and discussed the government's evidence, the ability to defend against the charges, ways to minimize possible prejudice from the jury viewing pornographic images of children, and defendant's trial rights. AFPD Winter also provided defendant with his frank assessment of the case -- defendant was likely to lose at trial. During a June 15, 2007 meeting, AFPD Winter "discussed the pros and cons of pleading guilty either pursuant to a plea agreement or without a plea agreement."

Next, the court concludes that the Rule 11 hearing was complete and thorough, strongly suggesting that defendant comprehended the plea agreement, including the guideline stipulations. *See United States v. Nostratis*, 321 F.3d 1206, 1209 (9th Cir. 2003). During the plea proceeding, defendant stated (under oath) that he had sufficient time to discuss the facts of his case and his decision to enter a plea with this counsel. When asked if he had read the entire plea agreement, discussed it with AFPD Winter, and had all of his questions answered by AFPD Winter before signing the agreement, defendant stated, "Yes, I did, Your

12

Honor."  Defendant confirmed that he had "detailed conversations" with AFPD

Winter regarding the guideline stipulations.  Such declarations in court, under

oath, carry a "strong presumption of verity."  *United States v. Rubalcaba*, 811 F.2d

491, 494 (9th Cir. 1987) (citation omitted).

Further, these under oath statements are consistent with the credible

testimony offered by AFPD Winter.  AFPD Winter explained to defendant both

the applicable guidelines (on at least two occasions) and the guideline stipulations

contained in the plea agreement.  Although defendant may not have possessed a

trained lawyer's knowledge of the guidelines, he certainly understood how the

guidelines applied to his case, how they operated, and the guideline stipulations

contained in the plea agreement.

Finally, defendant's claim that he had insufficient time to review the

plea agreement, and thus did not fully understand its terms, is not supported by

credible testimony.  AFPD Winter testified that he had discussed previous versions

of draft plea agreements with defendant.  He then discussed the specifics of the

final plea agreement with defendant on July 3 and 6, 2007.  Although optimally

defendant would have had more time to read the plea agreement prior to his

change of plea, the court concludes that he fully understood its terms and the plea

itself was voluntary.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, defendant's motion to withdraw from his plea of guilty is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 28, 2007.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*United States v. Sloan*, Cr. No. 06-00468 JMS; Order Denying Defendant's Motion to Withdraw Guilty Plea

14